**No. 15-3280**

---

## THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

MARC BENJAMIN,

*Plaintiff-Appellant,*

-vs-

BOARD OF TRUSTEES OF
BARTON COUNTY COMMUNITY COLLEGE,

*Defendants-Appellees.*

---

Appeal from the United States District Court
For the District of Kansas
The Honorable Julie A. Robinson
Case No. 2:17-CV-02557-JAR

---

### APPELLEE'S BRIEF

---

Derek S. Casey, KS 15125
TRIPLETT WOOLF GARRETSON, LLC
2959 N. Rock Road, Suite 300
Wichita, Kansas 67226
(316) 630-8100

*Attorneys for Appellee*

**ORAL ARGUMENT REQUESTED**

July 17, 2019

# <u>TABLE OF CONTENTS</u>

Table of Authorities ........................................................................ii

Statement of the Issues Presented for Review ........................... 1

Statement of the Case ................................................................ 1

Summary of the Argument ........................................................ 5

Arguments & Authorities ........................................................... 6

    I.     INFRACTIONS OF ATHLETIC CONFERENCE RULES ON SCHOLARSHIP BENEFITS ARE NOT SERIOUS VIOLATIONS OF CLEARLY DEFINED PUBLIC POLICIES TO SUSTAIN A RETALIATORY DISCHARGE CLAIM. ......................................................... 7

    II.    MR. BENJAMIN FAILED TO COME FORWARD WITH EVIDENCE TO SHOW THAT THE COLLEGE'S REASONS FOR TERMINATING HIS EMPLOYMENT WERE FALSE OR OTHERWISE UNWORTHY OF BELIEF ....................................................... 11

        A.    Temporal Proximity ..................................................... 13

        B.    Prior Disciplinary Record ............................................ 13

        C.    Conduct of the Investigation ........................................ 17

Conclusion .................................................................................. 19

Certificate of Compliance .......................................................... 19

Certificate of Service ................................................................. 21

(i)

# TABLE OF AUTHORITIES

## Cases

*Annett v. Univ. of Kan.*,
   371 F.3d 1233 (10th Cir. 2004)...........................................13

*Bracken v. Dixon Ind.*,
   272 Kan. 1272, 38 P.3d 679 (1988)......................................7

*Connelly v. Kansas Highway Patrol*,
   271 Kan. 944, 26 P.3d 1246 (2001)......................................9

*Dewitt v. Southwestern Bell*,
   845 F.3d 1299 (10th Cir. 2017).......................................17-18

*Emerson v. Labor Inv. Corp.*,
   284 F.2d 946 (10th Cir. 1960)...........................................8

*Flenker v. Willamette Industries, Inc.*,
   266 Kan. 198, 967 P.3d 295 (1998)......................................9

*Foster v. AlliedSignal, Inc.*,
   293 F.3d 1187 (10th Cir. 2002)......................................7, 12

*Goodman v. Wesley Med. Ctr.*,
   276 Kan. 586, 78 P.3d 817 (2003)................................7, 9, 12

*Herman v. Western Financial Corp.*,
   254 Kan. 870, 869 P.2d 696 (1994)....................................10

*Kendrick v. Penske Trans. Services, Inc.*,
   220 F.3d 1220 (10thCir. 2000)........................................12

*Lobato v. N.M. Env't Dep't*,
   733 F.2d 1283 (10th Cir. 2013).......................................13-14

*Moyer v. Allen Freight Lines, Inc.*,
20 Kan. App. 2d 203, 885 P.2d 391 (1994) .............................. 9

*Palmer v. Brown*,
242 Kan. 893, 752 P.2d 685 (1988) ..................................... 5, 9

*Prager v. Kansas Dept. of Revenue*,
271 Kan. 1, 20 P.3d 39 (2001) ................................................. 9

*Richison v. Ernest Group, Inc.*,
634 F.3d 1123 (10th Cir. 2011) ............................................. 17

*Shaw v. Southwest Kanas Groundwater Mgt. Dist.*,
42 Kan. App. 2d 994, 219 P.3d 857 (2009) ......................... 5, 9

*Smothers v. Solvay Chems., Inc.*,
740 F.3d 530 (10th Cir. 2014) .............................................. 17

*Trujillo v. PacificCorp*,
524 F.3d 1149 (10th Cir. 2008) ............................................ 17

*Walters v. Benedict College*,
No. 3:04-0952-JFA, 2006 WL 644442
(D.S.C. March 10, 2006) .................................................... 9-10

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I.    Whether infractions of athletic conference rules governing student-athlete scholarships are serious violation of a clearly defined public policy to support a claim of retaliatory discharge?

II.   Whether this Court should affirm the District Court's summary judgment when Mr. Benjamin failed to present evidence that the College's reasons for terminating the parties' employment relationship was false or otherwise unworthy of credence?

## STATEMENT OF THE CASE

In 2013, Marc Benjamin became the head coach of Barton Community College's softball program, the "Lady Cougars." Over the next three years, he transformed the team from a perennial loser into a regional champion and posted the program's best record in 2016. Mr. Benjamin, however, did not feel that he got the recognition he deserved and problems began to develop in his employment.

In April 2016, Mr. Benjamin complained to the College's Director of Athletics, Trevor Rolfs, that he felt underappreciated and that there was a lack of support for the softball program. Aplt. App. at 430. Mr. Rolfs met with Mr. Benjamin in June 2016 for his annual performance review. *Id*. Mr. Rolfs addressed Mr. Benjamin's success but also discussed his concerns about his negative attitude over the preceding months, his failure to maintain the softball facilities, and his inability to manage his

budget. *Id.* Mr. Benjamin responded that Mr. Rolfs should not worry about those matters but should focus on his wins. *Id.*; Aplt. App. at 104-105, ¶15. Despite his concerns, Mr. Rolfs recommended that Mr. Benjamin's contract be renewed for the 2016-17 academic year and agreed with the decision to give Mr. Benjamin a raise. *Id.* at 430.

During the summer of 2016, Mr. Rolfs observed that there were few Letters of Intent from softball recruits. Aplt. App. at 431. In August 2016, Mr. Rolfs learned that Mr. Benjamin had failed to recruit new players for the team and that most of the 2015-16 team was not returning. *Id. See also* Aplt. App. at 69, ¶ 44 (confirming date of August 2016 not 2017). Mr. Benjamin had only nine players on his roster when he was expected to have twenty. *Id.*

By October 2016, Mr. Rolfs believed that Mr. Benjamin was disgruntled and blaming Mr. Rolfs for his problems. Aplt. App. at 431. Mr. Rolfs informed the College's Director of Human Resources, Julie Knoblich, that he believed that Mr. Benjamin would attempt to discredit him. *Id.* Around that same time, Mr. Benjamin and his assistant coach made allegations that Mr. Rolfs made inappropriate sexual, racial and demeaning comments – which Mr. Rolfs denied. *Id.*

Mr. Benjamin met with Mr. Rolfs on February 20, 2017 to inform Mr. Rolfs that he had learned that the College's basketball coaches had paid for student flights in violation of athletic conference rules. Aplt. App. at 427. Mr. Rolfs investigated Mr. Benjamin's allegations and found four payments for transportation costs. *Id*. Mr. Rolfs' investigation indicated that one payment was likely violation of the athletic conference rules. *Id*. Mr. Rolfs informed the athletic conference's commissioner, Bryce Roderick, of his investigation. *Id*. Mr. Roderick agreed to allow Mr. Rolfs to finish his investigation and report back to him. *Id*.

In mid-April of 2017, Mr. Rolfs started receiving multiple complaints from softball players and parents about Mr. Benjamin's inappropriate behavior towards members of the softball team. Aplt. App. at 431. Mr. Rolfs became concerned that Mr. Benjamin was now taking his frustrations with his job and Mr. Rolfs out on his team. *Id*. On April 11, 2017, Mr. Rolfs met with Ms. Knoblich to discuss his decision to recommend that the College not renew Mr. Benjamin's contract for the 2017-18 academic year. *Id*. Over the next two weeks, Mr. Rolfs received telephone calls and emails from members of the softball team and parents complaining about Mr. Benjamin's behavior and compiled a

report based on those calls and emails. *Id*. Mr. Rolf's report described Mr. Benjamin's declining performance from January of 2016 through April of 2017 including emails he had received from students and parents describing Mr. Benjamin's inappropriate behavior. *Id*. at 431-32. *See also* Aplt. App (Redacted Vol.) at 485-502 (report and emails describing Mr. Benjamin's behavior in April 2017, *id*. at 491-502).

Mr. Rolfs submitted his report to the College's President recommending that Mr. Benjamin's contract not be renewed. Aplt. App. 432. The College's President informed Mr. Rolfs that, in consultation with the Board of Trustees, the College would terminate Mr. Benjamin's employment immediately. *Id*. On May 8, 2017, Mr. Rolfs met with Mr. Benjamin and informed him that the College was terminating his employment. *Id*. Mr. Rolfs provided Mr. Benjamin with a memorandum from the College's President confirming that his employment was terminated due to (1) insubordination, (2) verbal harassment, (3) unprofessional conduct and (4) his inability to manage the softball program in an appropriate and professional manner. *Id*. at 432-33.

Mr. Benjamin filed a lawsuit against the College alleging breach of contract and retaliatory discharge. Aplt. App. at 6-18. The district court

entered a pretrial order setting out these claims.  Aplt. App. at 37-50.

The College filed a motion for summary judgment on all claims.  Aplt.

App. at 51-53.  The district court granted judgment to the College on all

of Mr. Benjamin's claims and dismissing Mr. Benjamin's case in its

entirety.  Aplt. App. at 420-454 (memorandum and order); Aplt. App. at

455.  Mr. Benjamin appeals this judgment.

## SUMMARY OF THE ARGUMENT

Mr. Benjamin failed to establish a *prima facie* case for retaliatory

discharge based on whistleblowing.  The second element of a prima facie

claim required Mr. Benjamin to prove that a reasonably prudent person

would have concluded that the College "violated rules, regulations, or the

law pertaining to the public health, safety, and the general welfare."

Brief of Aplt. at 25-26, *citing Palmer v. Brown*, 242 Kan. 893, 900, 752

P.2d 685 (1988).  This requires evidence that Mr. Benjamin reported

"serious infractions of a clearly defined public policy."  *Shaw v. Southwest

Kanas Groundwater Mgt. Dist.*, 42 Kan. App. 2d 994, 1002, 219 P.3d 857

(2009). Mr. Benjamin's reports of violations of athletic conference rules

governing scholarship benefits were not serious infractions of a clearly

defined public policy.  The district court should have entered summary

judgment on this basis. Nonetheless, this Court may affirm the district court's judgment for this reason on appeal.

Second, Mr. Benjamin has failed to come forward with any evidence to show that the College's reasons for terminating his employment were false. It is undisputed that the College documented fifteen months of increasing insubordinate, verbally abusive and unprofessional conduct leading to his termination. This documentation includes multiple, written reports by members of the softball team and their parents documenting disturbing conduct by Mr. Benjamin in the weeks before his employment was terminated. The district court found that this evidence was uncontroverted and concluded that Mr. Benjamin had failed to meet his burden to show pretext.

## ARGUMENT & AUTHORITIES

The governing legal standards are not in dispute. To sustain a claim for retaliatory discharge, the employee must first establish a *prima facie* case showing (1) a reasonably prudent person would have concluded the employer was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare; (2) the employer had knowledge of the employee's reporting of such violation

prior to the discharge of the employee; and (3) the employee was discharged in retaliation for making the report. *Goodman v. Wesley Med. Ctr.*, 276 Kan. 586, 589-90, 78 P.3d 817 (2003).

If the employee establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate and non-discriminatory reason for the termination of employment. *Goodman,* 276 Kan. at 590. "If that takes place, the burden then shifts back to the employee to produce evidence that the employer's motives were pretextual." *Id.* "To avoid summary judgment, the employee must assert specific facts disputing the employer's motive for termination." *Id., citing Bracken v. Dixon Ind.*, 272 Kan. 1272, 1276, 38 P.3d 679 (1988). Moreover, the employee is required to prove pretext with "clear and convincing evidence." *Foster v. AlliedSignal, Inc.*, 293 F.3d 1187, 1193 (10th Cir. 2002).

## I.  INFRACTIONS OF ATHLETIC CONFERENCE RULES ON SCHOLARSHIP BENEFITS ARE NOT SERIOUS VIOLATIONS OF CLEARLY DEFINED PUBLIC POLICIES TO SUSTAIN A RETALIATORY DISCHARGE CLAIM.

Mr. Benjamin contended that Barton Community College terminated his employment because he reported that the College's basketball coaches paid for student transportation costs in violation of athletic conference rules. The College moved for summary judgment on

this contention arguing that questionable violations of athletic conference rules would not sustain a *prima facie* retaliatory discharge claim. The district court, straining the standard of review, concluded that these violations would support a *prima facie* claim. The College seeks this court's review of the district court's conclusion as a separate basis to affirm the district court's judgment. *See Emerson v. Labor Inv. Corp.*, 284 F.2d 946, 948 (10th Cir. 1960).

Barton Community College is a member of the National Junior College Athletic Association ("NJCAA") and the Kansas Jayhawk Community College Conference ("KJCCC"). Aplt. App. at 425. These conferences have rules governing the types of benefits or "grants-in-aid" that member institutions can provide to student athletes. *Id*. at 425-26. The NJCAA allows member colleges to provide scholarship benefits for tuition, fees, room, board, books, supplies and "[t]ransportation costs one time per academic year to and from the college by direct route." *Id*. at 425. The KJCCC allows member institutions to provide the same benefits to student athletes as allowed by the NJCAA with nine exceptions. *Id*. at 425-26. While there is no exception for transportation costs for students to and from school, the KJCCC Commissioner has

determined that the KJCCC rules prohibit the payment of these transportation costs. *Id*. at 426.

As previously stated, a retaliatory discharge action arises only where the whistleblower reports "serious infractions of a clearly defined public policy." *Shaw,* 42 Kan. App. 2d at 1002. This cause of action "must be based on violations of specific and definite rules, regulations, or laws." *Goodman,* 276 Kan. at 591, *citing Connelly v. Kansas Highway Patrol*, 271 Kan. 944, 26 P.3d 1246 (2001) (reports of violations of highway motor carrier inspection laws supported claim); *Prager v. Kansas Dept. of Revenue*, 271 Kan. 1, 44, 20 P.3d 39 (2001) (violations of Kansas taxation statutes); *Flenker v. Willamette Industries, Inc.,* 266 Kan. 198, 967 P.3d 295 (1998) (OSHA violations); *Palmer*, 242 Kan. 893 (Medicaid fraud); *Moyer v. Allen Freight Lines, Inc.*, 20 Kan. App. 2d 203, 208, 885 P.2d 391 (1994) (violations of federal trucking regulations).

Athletic conference rules regulating scholarship benefits are not "specific and definite rules, regulations, or laws" stating "a clearly defined public policy" to support a retaliatory discharge action. For example, the Court should consider *Walters v. Benedict College*, No. 3:04-0952-JFA, 2006 WL 644442 (D.S.C. March 10, 2006) (unpublished).

There, the plaintiff alleged that the defendant college had wrongfully terminated her employment because she had knowledge that the college had violated NCAA rules. *Walters*, 2006 WL 644442 at *9. The court rejected the plaintiff's contentions because the NCAA was a private organization and its rules do not constitute public policy. *Id*.

Likewise, the NJCCA and KJCCC rules are private policies governing their member institutions and not expressions of public policy. As such, these rules cannot support a claim for retaliatory discharge. *See also Herman v. Western Financial Corp*., 254 Kan. 870, 880-83, 869 P.2d 696 (1994) (rejecting retaliatory discharge claim based on employee's report of employer's violations of internal policies and guidelines regarding loan qualifications). There has been no evidence or authority advanced to show that these conference rules embody any clear public policy. Mr. Benjamin's report of violations of such rules therefore cannot support his cause of action for retaliatory discharge.

The district court gave Mr. Benjamin far too much latitude in considering the College's motion for summary judgment on this issue. The district court concluded that "a reasonable jury could conclude that the College had violated specific rules meant to promote the general

welfare." Aplt. App. at 444-45. The district court, while being considerate of the rules governing summary judgment, failed to appreciate that a retaliatory discharge action is a narrow exception to Kansas' public policy of at-will employment. The district court's application of this element of the *prima facie* case was in error. This Court should affirm the district court's judgment because Mr. Benjamin has failed to present evidence to support a *prima facie* claim.

## II. MR. BENJAMIN FAILED TO COME FORWARD WITH EVIDENCE TO SHOW THAT THE COLLEGE'S REASONS FOR TERMINATING HIS EMPLOYMENT WERE FALSE OR OTHERWISE UNWORTHY OF BELIEF.

As stated above, if this Court determines that Mr. Benjamin has stated a *prima facie* claim of retaliatory discharge, the burden shifts to Barton Community College to state a legitimate, non-discriminatory reason for the termination of his employment. The College terminated its employment relationship with Mr. Benjamin because Mr. Benjamin was insubordinate and engaged in verbal harassment and unprofessional conduct demonstrating an inability to manage the College's softball program in an appropriate and professional manner. The district court concluded that the College met its burden of production on this issue. Aplt. App. at 450-51.

The burden of proof, therefore, shifted back to Mr. Benjamin to show that a reasonable jury could find the College's proffered reason for termination were pretextual. Pretext is typically shown by evidence that (1) the employer's stated reason for termination was false; (2) the employer acted contrary to written company polices in terminating the employment relationship; or (3) the employer acted contrary to unwritten policies or practices in concluding the employment. Aplt. App. at 451, *citing Kendrick v. Penske Trans. Services, Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000). Mr. Benjamin must come forward with clear and convincing evidence to show pretext. *Foster,* 293 F.3d at 1193.

Mr. Benjamin, throughout his pretext argument, contends that the district court erred by considering evidence, such as Mr. Rolfs' testimony, which the jury is not required to believe. *See, e.g.*, Brief of Appellant at 34-35. The argument is misplaced in this context. As previously noted, "[t]o avoid summary judgment, the employee must assert specific facts disputing the employer's motive for termination." *Goodman,* 276 Kan. at 590. Mr. Benjamin cannot simply disregard the College's reasons for terminating his employment or the undisputed evidence and claim he has

proven pretext. Instead, it is his burden to "assert specific facts" to dispute the College's "motive for termination."

### A.   <u>Temporal Proximity</u>.

Mr. Benjamin argues on appeal that evidence of the timing of his termination in relation to his report of conference rules violations (temporal proximity) is proof of pretext. This timing – also known as temporal proximity – may establish the causal element of a *prima facie* case of retaliatory discharge, but is not sufficient, standing alone, to raise a genuine issue of pretext. *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1241 (10th Cir. 2004). Therefore, consideration of Mr. Benjamins remaining contentions is required.

### B.   <u>Prior Disciplinary Record</u>.

Mr. Benjamin asserts that the lack of any evidence of a prior disciplinary record is evidence of pretext. The district court concluded that the lack of formal discipline cannot establish pretext where the College's employment policies do not require progressive discipline and there is no suggesting that Mr. Benjamin was treated differently than other similarly situated employees. Aplt. App. at 452, *citing Lobato v. N.M. Env't Dep't*, 733 F.2d 1283 (10th Cir. 2013).

Mr. Benjamin acknowledges the lack of evidence and the authority of *Lobato* but then argues that Mr. Benjamin's lack of prior discipline, nonetheless, shows that the College's claims are "unworthy of credence." Brief of Appellant at 39-40. He claims, without authority, that Mr. Rolfs' failure to take disciplinary action against after his earlier incidents is inconsistent with his decision to terminate Mr. Benjamin's in April 2017. Apparently, Mr. Benjamin wants this Court to find evidence of pretext by claiming he is the similarly situated employee who was treated differently than himself. Following this logic, however, Mr. Benjamin, due to his escalating misconduct, was not a similarly situated employee.

The undisputed evidence shows that Mr. Benjamin's conduct during 2016 was troublesome. As Mr. Benjamin admits in his brief on appeal, he had an unprofessional outburst during a basketball game where he yelled at the College's Athletic Auxiliary Services/Compliance Supervisor in January 2016. Brief of Appellant at 32. Mr. Benjamin also admits that, in May 2016, he had depleted his budget and failed to make improvements to the softball facilities. *Id*. at 33. The Court should note that Mr. Benjamin omits the undisputed fact that Mr. Rolfs met with Mr. Benjamin in June 2016 for his annual performance review and discussed

Mr. Benjamin's negative attitude over the preceding months, his failure to adequately maintain the softball facilities, and his inability to manage the softball team's budget.  Aplt. App. at 430.

Mr. Benjamin though continues his admissions by acknowledging that he failed to recruit players over the summer of 2016 and had only nine players on the roster when he was expected to have twenty.  Brief of Appellant at 33; Aplt. App. at 431.  Mr. Benjamin's brief then omits the district court's finding that Mr. Benjamin was insubordinate in October 2016 when he made allegations that Mr. Rolfs made inappropriate sexual, racial and demeaning comments.  Aplt. App. at 431.

These 2016 incidents, however, pale in comparison to Mr. Benjamin's conduct towards his team as reported in April 2017.  Mr. Benjamin has never contested the derogatory, demeaning and divisive conduct documented by the players and parents in April 2017.  His misconduct included:

- Mr. Benjamin told the team that one player has back pain "because she is always with black guys," Aplt. App. at 492, 493, 502;

- After a loss, Mr. Benjamin would tell the team that it was his fault and they should go tell Mr. Rolfs "to fire me.  I hope he fires me," Aplt. App. at 492;

- Mr. Benjamin, when he observed a third-base coach from the opposing team visiting with his third base player, stated loudly that he was wasting his time because "she likes girls," Aplt. App. at 494.

There were other reports of "mean spirited and disgusting behavior." Aplt. App. at 494.  One parent reported that her daughter would not return and no longer wanted to play softball – "the sport she fell in love with many years ago," because of Mr. Benjamin's behavior.  *Id*. at 501.

The undisputed evidence shows that Mr. Benjamin's conduct deteriorated and turned into attacks on the College's students which were reported in April 2017.  Mr. Benjamin cannot argue legally or factually that he was a similarly situated employee in 2016 and April 2017.  Considering this undisputed evidence, the district court properly concluded that the lack of prior disciplinary action would not give rise to a genuine issue of fact on pretext.

## C.    <u>Conduct of the Investigation</u>.

Mr. Benjamin argues that Mr. Rolfs' conduct of the investigation leading to the termination of his employment was unfair and is evidence of pretext.  Brief of Appellant at 41-48, *citing Dewitt v. Southwestern Bell*, 845 F.3d 1299 (10th Cir. 2017); *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530 (10th Cir. 2014); and *Trujillo v. PacificCorp*, 524 F.3d 1149 (10th Cir. 2008.)  This is a new theory advanced for the first time on appeal.

The Court should disregard this new theory.  Mr. Benjamin offers no proof to establish plain error as required by *Richison v. Ernest Group, Inc.*, 634 F.3d 1123, 1127-31 (10th Cir. 2011).  The alleged error is not plain and certainly does not affect the fairness, integrity or public reputation of judicial proceedings to satisfy this "extraordinary, nearly insurmountable burden."  *Id*.  Mr. Benjamin, instead, simply failed to raise an issue outlined in at least three reported opinions from this Court. Moreover, it would be fundamentally unfair to the College to address an issue that was not offered, considered and developed fully in and by the District Court.  This theory is forfeited.

Insofar as this Court considers this theory to be properly before it, the College would assert that there is no basis to insinuate, in the present

record, that the College's investigation of Mr. Benjamin's conduct was in any manner unfair. As has been reiterated by this and other courts in countless opinions, it is not the court's role to determine whether the employer's decision was wise, fair or correct. *Dewitt*, 845 F.3d at 1307 (citations omitted). Instead, the court must determine whether the employer honestly believed the reasons for its actions and acted in good faith on those beliefs. *Id.* Here, the College had information from multiple sources about a pattern of disturbing conduct over fifteen months which was essentially uncontested by Mr. Benjamin.

The District Court properly expressly found material facts to be uncontested in establishing that Mr. Rolfs had not suspiciously documented his report in bad faith:

- Although the number of player and parent complaints increased after Mr. Benjamin reported the conference rule violations, it was undisputed that these complaints came from softball players and their parents and not from Mr. Rolfs;

- While Mr. Rolfs did request the players and their parents to submit their observations and comments in writing, it was uncontroverted that the players and the parents initiated the conversations and

that Mr. Rolfs requested they state their concerns in writing for documentation purposes;

- There was no allegation that Mr. Rolfs falsified any of the complaints or emails and there is no support in the record that Mr. Rolfs solicited the complaints from the parents and students; and

- It was uncontroverted that Mr. Rolfs' timeline of performance issues, which spanned fifteen months from January 2016 to April 2017, was documented throughout the course of the year.

Aplt. App. at 453-54. There is no basis to contend that the College conducted a sham investigation of Mr. Benjamin's undisputed misconduct leading to the termination of his employment.

## CONCLUSION

For the reasons stated above, the Board of Trustees of Barton County Community College respectfully request that this Honorable Court affirm the District Court's judgment.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations in Fed. R. App. P. 32(a)(7)(B) because it contains 3908 words.

This brief also complies with the typeface requirements in Fed. R. App. P. 32(a)(5) and the typestyle requirements in Fed. R. App. P. 32(a)(6) because it was prepared in proportionally spaced typeface using Microsoft Word 2013 in Century Schoolbook typeface, font size 14.

All privacy redactions required by the rules have been made and this ECF submission was scanned for viruses with the most recent version of a commercial virus scanning program, Webroot Secure Anywhere, last updated on July 17, 2019, and according to the program, it is free of viruses.

Finally, I certify that the hard copy of this brief submitted to the Court is an exact copy of that filed by ECF.

<div style="margin-left:40%">

Respectfully submitted,

TRIPLETT WOOLF GARRETSON, LLC

 s/Derek S. Casey
Derek S. Casey, KS #15125
dscasey@twgfirm.com
2959 North Rock Road, Suite 300
Wichita, Kansas 67226
Telephone: (316) 630-8100
www.twgfirm.com

*Attorney for Appellee*

</div>

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of this brief was filed with the Clerk of the Court through the Appellate CM/ECF System.  I certify that all participants are registered CM/ECF users and service will be accomplished by that system.

Respectfully submitted,

TRIPLETT WOOLF GARRETSON, LLC

s/Derek S. Casey
Derek S. Casey, KS #15125
dscasey@twgfirm.com
2959 North Rock Road, Suite 300
Wichita, Kansas 67226
Telephone: (316) 630-8100
www.twgfirm.com

*Attorney for Appellee*